SUTTON (IRVING v.). See Cases Nos. 7,077 and 7,078.

---

## Case No. 13,647.
### SUTTON v. KETTELL.
[1 Spr. 309; [1] 18 Law Rep. 550.]

District Court, D. Massachusetts. Nov., 1855.

BILL OF LADING—PAROL EVIDENCE—MISTAKE.

That part of a bill of lading which acknowledges that goods have been shipped, may be shown by parol evidence to have been made by mistake. It is like any other receipt.

[Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 139.]

[Cited in Sears v. Wingate, 3 Allen, 108.]

In admiralty.

C. P. Curtis, Jr., for libellant.
William Brigham, for respondents.

SPRAGUE, District Judge. This is a libel to recover the freight of a cargo of logwood, consigned by one Germaine to the respondents, and brought from Hayti to Boston, in the brig General Foster, amounting, as per charter-party, to $1200.

The respondents admit the charter-party, and the services performed, but in defence, they seek to deduct the value of twenty-eight tons of logwood, loaded on deck, and thrown overboard on account of stress of weather, as well as of five tons which were not brought in the vessel, though included in the bill of lading.

I will consider the five tons first. The evidence is, that when the last lighter's load came off to the brig, a portion of it was put on the vessel's deck: but that the mate, as soon as these five tons were taken on, found that they could not safely be carried, and immediately threw them back into the lighter, where there was remaining other logwood belonging to Germaine, the owner of the cargo. Now, by the bill of lading, the

captain acknowledges the receipt of these five tons, and engages to deliver them to the respondents in Boston.

But is this receipt true? It is certainly not conclusive on the master; for a receipt is always open to contradiction and explanation, and the evidence shows that these five tons were not shipped. They were only on the deck for the purpose of ascertaining whether they could be carried, and as soon as it became evident that they could not be carried, they were, without the captain's knowledge, put back into the possession of Germaine's agents. These five tons belonged to Germaine, and it is wholly immaterial to the owners of the vessel, what became of them after they were put back into the lighter [or what Germaine's agents did with them afterwards.] [2] The master signed the bill of lading under a mistake, and that cannot render the libellants responsible.

The respondents, secondly, claim to deduct the value of the logwood which was on deck and was lost. And they assign as reasons, that, upon the faith of the bill of lading, which was signed by the master without specifying what cargo was on deck, and forwarded to them, they made advances to Germaine on the logwood, to the whole value of that thrown overboard, and also, that they got insurance thereon, without being able to designate how much of said insurance should be upon cargo on deck, and supposing that it was all under deck; and that, consequently, such as was on deck was not covered by the policy.

The burden is on the respondents to prove these allegations, and I am of opinion that neither of these positions has been sustained by their evidence. In fact, they have abandoned the first one in their second answer, now alleging that Germaine was indebted to them, by former shipments, to the value of the whole cargo. [And the testimony of their own clerk, Mr. Kurtz, is sufficient to disprove the second. The respondents say that they were misled by the bill of lading; but Mr. Kurtz's testimony shows that they got all the insurance they could have got before the bill of lading was received by them. He says, in the first place, that he procured the insurance, but whether personally, or by sending a clerk, he is not sure; but the open policy put in by the respondents shows an entry of the date of June 11, 1855, on "property per General Foster." Mr. Kurtz, upon having his memory refreshed, says that that entry or indorsement was made at the time of its date, and in consequence of advices received from Germaine of logwood loading on board this vessel; that, not then knowing the precise amount, the valuation could not then be entered on the policy, but was left until receipt of the bill of lading by the vessel. He further says that the letter containing the bill

---

[1] [Reported by F. E. Parker, Esq., assisted by Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [From 18 Law Rep. 550.]

of lading and invoice, which was put aboard the General Foster, was received here on June 27th, before the arrival of the brig, by a vessel from New Providence, where the General Foster had put in in distress after the loss of her deck load; which vessel also brought the news of the damage to the brig, and of that loss. After these papers arrived, Mr. Kurtz says, he went and filled up the amount of the property covered in the policy; but it was then too late to insure the deck-load, as the loss had occurred before she arrived at New Providence, and the respondents then knew of it.][2] And the second is not proved. (The judge here went into a full and minute examination of the evidence derived from the policy, invoice, bill of lading, letters, and the testimony of the respondents' clerk.) The allegation that the insurance was obtained on the faith of the bill of lading, not having been proved, it becomes unnecessary to decide whether the owners would have been responsible for this loss, had the respondents been misled by the bill of lading, as alleged, and a decree must be entered for the libellant for the whole amount of the charter-party, with costs.

NOTE. As between the shipper and ship-owner, "the bill of lading has, in legal effect, a double aspect. It is a contract for the transportation and safe delivery of the property shipped; and it also embodies, as a matter collateral to that contract, a receipt for the goods so shipped. In so far as the bill operates as a contract, it is undoubtedly, the exclusive evidence of the obligation of the parties; but in respect to those clauses which operate merely as a receipt for the goods, it has no higher obligation than an ordinary receipt, and is open to explanation and rectification by parol proof." Goodrich v. Norris [Case No. 5,545]; Wolfe v. Myers. 3 Sandf. 7; Shepherd v. Naylor, 5 Gray, 591; The Tuskar [Case No. 14,274]; O'Brien v. Gilchrist, 34 Me. 554.